UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**SPIN MASTER LTD. and
SPIN MASTER, INC.,**

      **Plaintiffs,**

         v.

**BUREAU VERITAS S.A., BUREAU
VERITAS CONSUMER PRODUCTS
SERVICES, INC., EUROFINS
SCIENTIFIC S.A. and EUROFINS
PRODUCT SAFETY LABS,**

      **Defendants.**

**COMPLAINT**

Civ. No:

---

      Plaintiffs Spin Master Ltd. and Spin Master, Inc., through their undersigned attorneys, for their Complaint state as follows:

## NATURE OF THE CASE

      1.     Spin Master Ltd. engaged Bureau Veritas to conduct a toxicity test, using live animals, of the top-selling children's craft toy bead called "Aqua Dots." Bureau Veritas engaged Eurofins in the effort, and both companies reported in August, 2007 that the beads were not toxic. Three months later, on November 7, 2007, the toy beads were recalled after children swallowed them and became comatose -- because the beads were found to contain a chemical that metabolizes into the so-called "date rape drug" when swallowed.

      2.     Bureau Veritas and Eurofins did not discover this because the test was profoundly flawed. Rather than dose the test animals with the bead material, they soaked the beads in corn oil and dosed the animals with the corn oil instead, resulting in over $100 million in damages to Plaintiffs as the Aqua Dots beads were recalled just before the holiday shopping season.

## PARTIES

3.      Plaintiff Spin Master Ltd. is a Canadian corporation with its principal place of business at 450 Front Street West, Toronto, ON M5V1B6 Canada.

4.      Plaintiff Spin Master, Inc., a wholly-owned subsidiary of Spin Master Ltd., is a Delaware corporation with its principal place of business located at 5890 W. Jefferson Blvd, Los Angeles, California, 90016.  Spin Master, Inc. distributes children's toys in the United States. Spin Master, Inc. and Spin Master Ltd. are together referred to in this Complaint as "Spin Master."

5.      Defendant Bureau Veritas S.A. is a foreign corporation founded in 1828, with its headquarters located in Paris, France, and registered to do business in New York.   Bureau Veritas S.A. is a single integrated entity that is advertised on its website as the "Bureau Veritas Group."   In describing consumer products services of the Bureau Veritas Group, the website explains, "With over 700 offices and laboratories in 140 countries, including over 50 locations specializing in consumer products, Bureau Veritas offers you the convenience of global coverage with local service where you need it."  The consumer products testing services are also part of what Bureau Veritas S.A. operates as its Consumer Products Services Division.  Bureau Veritas S.A. also represents on its website that the staff at these 700+ locations participate together in developing worldwide standards that "keep you and us at the forefront of changes in safety requirements and testing methods."  Thus Bureau Veritas laboratories across the globe share experience, test methods and techniques, and work together as a collective unit.  Bureau Veritas S.A. asks existing and prospective customers to rely on this global base of experience in retaining and trusting any component of the Bureau Veritas Group.  As part of managing its global collection of laboratories, Bureau Veritas S.A. also decides which laboratories should grow or not.  Upon information and belief, Bureau Veritas S.A.'s laboratories also operate as a collective entity by having tests requested of one Bureau Veritas laboratory performed by

another Bureau Veritas laboratory.

6.      Defendant Bureau Veritas Consumer Product Services, Inc. ("Bureau Veritas CPS") is a Massachusetts corporation with its principal place of business and a testing facility located at 100 Northpointe Parkway, Buffalo, New York.  Bureau Veritas CPS is part of the Bureau Veritas Group, operating some of the 700+ laboratories, and is part of the Consumer Products Services Division of Bureau Veritas S.A.  Bureau Veritas S.A. and Bureau Veritas CPS are together referred to in this Complaint as "Bureau Veritas."

7.      Eurofins Scientific S.A. ("Eurofins Scientific") is a foreign corporation with its principal place of business in Nantes, France.  Eurofins Scientific is a life sciences company that advertises its expertise in product testing as being robust due to its staff of about 7,000 in over 150 laboratories in 29 countries across the world.  Eurofins Scientific refers to this collection of people in laboratories across the world as being one integrated entity, which it has dubbed "the Group."   Eurofins Scientific explains on its website, "Through R&D, in-licensing and acquisitions, the Group draws on the latest developments in the field of biotechnology to offer its clients unique analytical solutions and the most comprehensive range of testing methods."

8.      One part of the Group is Eurofins Product Safety Labs ("Eurofins PSL"), which is a Delaware corporation with its principal place of business located in Dayton, New Jersey.  Eurofins Scientific and Eurofins PSL are together referred to in this Complaint as "Eurofins."  Eurofins operates testing facilities in, among other places, Des Moines, Iowa and East Brunswick, New Jersey.

**JURISDICTION AND VENUE**

9.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Venue is appropriate in the Western District of New York pursuant to 28 U.S.C. § 1991 because a Bureau Veritas facility located in this District agreed to undertake testing for Spin Master, which testing is the subject of this lawsuit.  Further, Eurofins performed related testing for, and provided test results to, this same Bureau Veritas facility in this District.

## **FACTUAL ALLEGATIONS**

11.     Aqua Dots is a craft kit that contains small beads, called "Aqua Dots" beads, that children use to make their own designs.  Spin Master, Inc. distributed Aqua Dots craft kits and beads in the United States in 2007.

12.     In June, 2007, Spin Master engaged Bureau Veritas to conduct acute oral ingestion toxicity testing, using live animals, on a sample of Aqua Dots beads.  Bureau Veritas understood that the beads, each about 5 mm in diameter, were intended to be used by children and that the testing was being requested in the event that a child might misuse the beads by ingesting them.

13.     Bureau Veritas had the animal test performed by Eurofins in a lab it operates in New Jersey.  Eurofins understood that it was performing a test for a child's toy on behalf of a toy manufacturer or distributor, and that the distributor or manufacturer would rely on the results of Eurofins' test in placing these toy craft beads into the hands of children.

14.     Bureau Veritas chose and specified to Eurofins the oral toxicity animal test for a children's toy, codified within the Code of Federal Regulations at 16 C.F.R. §1500.3(c)(2)(i). That section states that a substance is considered toxic or not based on the effect that the test substance has on white rats who receive a dose of 5 grams of test substance for every kilogram that the test animal weighs.

15.     Eurofins performed testing and provided a written report to Bureau Veritas. Bureau Veritas then prepared its own report to Spin Master, stating that the animal toxicity

testing was complete and that the Aqua Dots beads were found to "not be[] toxic" under United States federal toy regulations for acute oral toxicity.  The Bureau Veritas report was printed on one page, which set forth at the top of the page the trademarked seal of Bureau Veritas, which is a seated woman (meant to be the allegorical figure of Truth) and other symbols surrounded by "Bureau Veritas 1828."  The name "Bureau Veritas" appears in bold print beneath the seal.  The seal and "Bureau Veritas" name, as well as the year 1828 being when Bureau Veritas S.A. was founded, all attest to the integrity of the report.

16.     Spin Master also was provided a copy of the Eurofins report, which stated not only that the Aqua Dots beads were not toxic, but also that "All animals survived, gained body weight and appeared active and healthy during the study.  There were no signs of gross toxicity, adverse pharmacological effects or abnormal behavior."  The Eurofins report set forth a logo showing "eurofins" in a large font, and the name "Product Safety Labs" in a smaller font and below the "eurofins" name, showing that Product Safety Labs was one part of the overall Eurofins organization.

17.     Spin Master relied on the Bureau Veritas report and the Eurofins report in continuing to distribute and sell Aqua Dots craft kits containing Aqua Dots beads.

18.     On November 7, 2007, about three months after Bureau Veritas sent to Spin Master the test reports, the Consumer Product Safety Commission recalled all Aqua Dots beads sold in the United States.  Separate reports were made of children having swallowed the beads and becoming lethargic and non-responsive.  The children were rushed to emergency rooms.  The beads were found to contain the chemical 1,4 butanediol, which when swallowed metabolizes into gamma-hydroxy butyrate ("GHB"), also known as the "date-rape drug."

19.     The testing requested from Bureau Veritas and performed by Eurofins was grossly flawed.  Rather than having the test animals ingest the bead material, Eurofins soaked the beads in corn oil and then dosed the test animals with the corn oil instead.  Had the testing been

performed properly, the animals would not have "appeared active and healthy during the study," but rather would have been grossly incapacitated and inactive due to the neurological effects that would have resulted when the 1,4 butanediol metabolized into GHB.

20.     The Eurofins report, approved by Bureau Veritas, indicated that the craft beads themselves were dosed to the test animals at a dose of 5 grams of beads per kilogram of weight of the test animal, as required by the CFR standard for animal testing.  Eurofins and Bureau Veritas were thus not only grossly negligent in conducting the test, but in misreporting the test as well.

21.     Had Bureau Veritas and Eurofins acted with the appropriate level of professional care, Spin Master would have been informed in early August, 2007, that significant adverse physical effects were observed in the test animals after they ingested the Aqua Dots beads.  With this knowledge and through subsequent investigation, the fact that the beads contained 1,4 butanediol would have been discovered, the November 7, 2007 recall of all Aqua Dots beads would have been avoided, and the Aqua Dots beads would have been replaced before the upcoming holiday shopping season.

22.     By the time of the recall in November, Aqua Dots had been featured by major retailers and had won "top toy" awards heading into the 2007 holiday shopping season.  Over 1 million Aqua Dots sales had been made to consumers prior to the recall, and sales were increasing rapidly – approximately 3 million Aqua Dots products were in transit to retailers or already on retail shelves at the time of the recall, poised for an outstanding holiday sales figure. All 3 million of these products, as well as the 1+ million products already sold to consumers, were recalled.  But if the ingestion test had been performed correctly, a new version of the Aqua Dots products already would have been distributed in time for the holiday season.

23.     The resulting harm to Spin Master includes the cost of the November 7, 2007 recall; the money that would have been earned on the new bead products; and the damage to

Spin Master's reputation among consumers and retailers.

## COUNT ONE

### Gross Negligence

24.     Spin Master realleges and incorporates into Count One all of the allegations in this Complaint.

25.     Bureau Veritas and Eurofins failed to exercise even slight care in their conduct relating to testing the Aqua Dots beads and reporting on that test.

26.     The acts and omissions of Bureau Veritas and Eurofins were so careless as to show complete disregard for the rights and safety of Spin Master and of the public.

27.     Bureau Veritas and Eurofins acted so recklessly in testing and reporting the safety of Aqua Dots, as to indicate their disregard of the consequences of their actions.  As a result of the gross negligence of Bureau Veritas and Eurofins, Spin Master has suffered monetary loss and damage to its reputation.

## COUNT TWO

### Negligent Performance of Services as to Eurofins

28.     Spin Master realleges and incorporates into Count Two all of the allegations in this Complaint.

29.     Spin Master engaged Bureau Veritas to conduct animal testing of Aqua Dots beads, and Bureau Veritas engaged Eurofins to perform the test.  Eurofins was aware of the purpose of the animal testing, and that a report that the beads were safe and not toxic would be relied upon in placing the Aqua Dots beads into the stream of commerce to be sold for use by children.

30.     Spin Master relied on the expertise of Eurofins relating to the animal testing of the Aqua Dots beads.

31.    A special duty of care arose from the expertise of Eurofins, and a special relationship of trust and confidence existed between Spin Master and Eurofins by virtue of that expertise.

32.    Eurofins had a duty to exercise due care in carrying out the requested animal testing on the Aqua Dots beads.

33.    Eurofins breached this duty by failing to exercise due care in ordering, designing, overseeing, performing, interpreting, and reporting on the animal testing of Aqua Dots beads.

34.    Spin Master relied on the integrity of the Eurofins test reports in distributing and selling Aqua Dots toys.

35.    Had Eurofins exercised due care relating to the animal testing of Aqua Dots beads, the results of the testing would have led quickly to the discovery of 1,4 butanediol in the beads and its effect on humans.

36.    As a result of the negligence of Eurofins, Spin Master has suffered monetary loss and damage to its reputation.

## COUNT THREE

### Violation of New York General Business Law § 349

37.    Spin Master realleges and incorporates into Count Three all of the allegations in this Complaint.

38.    Spin Master engaged Bureau Veritas, who engaged Eurofins to assist it, in the furnishing of a service—consumer products testing—to Spin Master in the State of New York.

39.    Bureau Veritas and Eurofins claim to have expertise in the field of consumer products testing.

40.    Spin Master and other consumers in the market of consumer products testing services rely on this claimed expertise in engaging them to test their products.

41.    Despite this claimed expertise, Bureau Veritas and Eurofins failed to ensure both the adequacy of their testing methods and interpretation of the testing results in violation of the New York General Business Law § 349.

42.    Bureau Veritas' and Eurofins' deceptive acts and practices have an impact on consumers of their services and the consumers of the products Bureau Veritas and Eurofins test.

43.    With respect to the Aqua Dots testing, Bureau Veritas and Eurofins failed to ensure the adequacy of their testing methods and interpretation of the testing results.

44.    The Aqua Dots test results and the test reports were incorrect, misleading, and deceptive, within the meaning of the New York General Business Law § 349.

45.    Spin Master relied on Bureau Veritas and Eurofins' expertise and the incorrect, misleading, and deceptive test results to its detriment in continuing to distribute and sell Aqua Dots craft kits and beads to the public.

46.    Bureau Veritas' and Eurofins' deceptive acts and practices had an impact on Spin Master as a consumer of their services and on consumers at large.  Spin Master relied on Bureau Veritas' and Eurofins' purported expertise and, as a result, relied on the incorrect, misleading, and deceptive test results to its detriment in continuing to distribute and sell Aqua Dots craft kits and beads to the public.

47.    As a result of the deceptive acts and practices of Bureau Veritas and Eurofins, Spin Master has suffered monetary loss and damage to its reputation.

## **PRAYER FOR RELIEF**

WHEREFORE, Spin Master prays for:

a.    a judgment in excess of $100 million in compensatory damages, to be determined at trial;

b.    punitive damages, in an amount to be determined at trial;

c.      attorneys' fees, expert witness fees, and costs of this litigation; and

c.      any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated:  December 17, 2008                    Respectfully submitted,


**HISCOCK & BARCLAY, LLP**

By:/s/Thomas F. Knab

1100 M&T Center
3 Fountain Plaza
Buffalo, New York  14203
Telephone:  (716) 566-1300
Facsimile (716) 566-4012

**WINSTON & STRAWN LLP**

By: /s/ Thomas J. Wiegand
     One of their attorneys

Ronald Y. Rothstein
Thomas J. Wiegand
Bryna J. Dahlin
Joanna E. Wade
35 West Wacker Drive
Chicago, Illinois 60601
Telephone (312) 558-5600
Facsimile (312) 558-5700

*Attorneys for Spin Master Ltd. and Spin Master, Inc.*