UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————————

SPIN MASTER LTD.

                              Plaintiff,

              -vs-                                08-CV-923

BUREAU VERITAS CONSUMER
PRODUCTS SERVICES, INC. and
EUROFINS PRODUCT SAFETY LABS,

                       Defendants.
———————————————————————————

APPEARANCES:        WINSTON & STRAWN LLP (RONALD Y. ROTHSTEIN,
                    ESQ., OF COUNSEL), Chicago, Illinois, Attorneys for
                    Plaintiff.

                    HUGHES HUBBARD & REED, LLP (ERIC BLUMENFELD,
                    ESQ., OF COUNSEL), New York, New York, Attorneys for
                    Defendant Bureau Veritas Consumer Products Services,
                    Inc.

                    KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
                    (DORIT UNGAR, ESQ., OF COUNSEL), New York, New
                    York, Attorneys for Defendant Eurofins Product Safety Labs.

## JURISDICTION

This case was referred to the undersigned by the Hon. Richard J. Arcara on

February 9, 2009 for all pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and (B),

and for report and recommendation on all dispositive motions pursuant to 28 U.S.C.

§ 636(b)(1)(B) and (C).  It is presently before the court on defendants' motion for

judgment on the pleadings dismissing the plaintiff's claim pursuant to New York General

Business Law § 349 (Dkt. ##71 & 77), and plaintiff's motion for leave to file a second amended complaint.  Dkt. #84.   For the reasons that follow, it is recommended that the motion on the pleadings be GRANTED and the cause of action pursuant to New York General Business Law § 349 be dismissed.  Additionally, the motion for leave to amend is DENIED.

## FACTUAL BACKGROUND

Plaintiff Spin Master Ltd. Is a Canadian corporation which distributes children's toys in the United States.  Dkt. #7, ¶ 3.[1]  In 2007, Spin Master distributed a product known as "Aqua Dots," a craft kit with beads that fuse together when wet.  *Id.,* ¶ 11. Defendant Bureau Veritas Consumer Product Services, Inc. ("BVCPS") is a Massachusetts corporation with its principal place of business in Buffalo, New York.  *Id.,* ¶ 6.  In June 2007, Spin Master engaged BVCPS to conduct toxicity tests on a sample of Aqua Dots.  *Id.,* ¶ 12.  Defendant Eurofins Product Safety Lab ("EPSL") is a Delaware corporation with its principal place of business in New Jersey.  *Id.,* ¶ 8. BVCPS arranged to have the testing of the Aqua Dots done by EPSL at a testing facility in New Jersey.  *Id.,* ¶ 13.

In its amended complaint, filed January 7, 2009, plaintiff alleges that EPSL completed testing on the Aqua Dots and prepared a report for BVCPS.  BVCPS then prepared a report for Spin Master stating that the product was not toxic under United

---

[1]  This case was originally brought by and against other entities related to the parties.  By stipulation filed March 27, 2009, the action was discontinued as to Bureau Veritas S.A, and Eurofins Scientific S.E., and Spin Master, Inc. was dropped as a party  *See* Dkt. #49.

States federal toy regulations for acute oral toxicity.  Dkt. #7, ¶ 15.  In November 2007,

the United States Consumer Product Safety Commission recalled Aqua Dots following

reports of injuries to children who ingested the beads.  Aqua Dots were found to contain

the chemical 1,4 butanediol, which when ingested metabolizes into gamma-hydroxy

butyrate, also known as the "date rape drug."  *Id.,* ¶ 19.  Plaintiff alleges that the testing

done by the defendants was "grossly flawed."  *Id.,* ¶ 21.  Rather than having the test

animals ingest the bead material, the beads were soaked in corn oil which was then

dosed to the subject rats.  *Id.*  Plaintiff alleges that if the testing had been done

properly, the test animals would have been incapacitated and further testing would have

revealed the dangerous chemical.  *Id.*  Plaintiff further alleges that the EPSL report

indicated that the beads themselves were dosed to the test animals as required by

federal regulations.  *Id.,* ¶ 32.[2]

　　　　Plaintiff has set forth three causes of action - gross negligence, negligent

performance of services as to EPSL and violation of New York General Business Law

§ 349.  In support of the section 349 cause of action, plaintiff alleges that defendants

"claim to have expertise in the field of consumer product testing," that plaintiff "and

other consumers in the market of consumer products testing services rely on this

claimed expertise in engaging them to test their products," and that defendants "failed

to ensure both the adequacy of their testing methods and interpretation of the testing

---

[2]  Despite this allegation, the EPSL report, appended to the Affidavit of attorney Dorit Ungar, clearly states that a sample of the Aqua Dots was placed in a container and covered with 10 milliliters of corn oil.  The sample was then stored in an incubator at 37 to 39 degrees centigrade for 72 hours.  "The resulting extract solution was considered to be the test substance." Dkt. #87, Exh. C.  There is no representation that the bead material itself was fed to the subject rats.

results . . .." Dkt. #7, ¶¶ 51-53. Plaintiffs also allege that defendants' deceptive acts and practices "have an impact on consumers of their services and the consumers of the products" they test. *Id.,* ¶ 54.

On May 18, 2010, defendant BVCPS filed a motion for judgment on the pleadings to dismiss Count Three of the amended complaint, the claim pursuant to the General Business Law. Dkt. #71. On June 11, 2010, defendant EPSL joined in the motion for judgment on the pleadings. Dkt. #77. Plaintiff filed a response to the motion on July 9, 2010 (Dkt. #79), and the defendants filed reply memoranda on July 30, 2010. Dkt. ##81 & 82. The court heard oral argument on August 9, 2010 and reserved decision.      On August 18, 2010, plaintiff filed a motion seeking leave to file a second amended complaint. Dkt. #84. Specifically, plaintiff seeks permission to add two additional causes of action, Count Four for the violation of the New Jersey Consumer Fraud Act ("NJCFA") as to defendant EPSL and Count Five for common law fraud. The defendants filed responses to the motion on September 17, 2010 (Dkt. ##86 & 88), and plaintiff filed a reply on October 1, 2010. Dkt. #95.

## DISCUSSION

### 1.  Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is governed by the same standard applicable to a Rule 12(b)(6) motion to

dismiss for failure to state a claim upon which relief may be granted.  *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006).  The granting of a motion for judgment on the pleadings is appropriate only if, with all reasonable inferences drawn in favor of the non-moving party, the non-moving party has failed to allege facts that would give rise to a plausible claim or defense.  *See Ashcroft v. Iqbal*, ---U.S. ----, 129 S.Ct. 1937, 1949, (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In order to defeat the motion, a plaintiff must provide more than legal conclusions or a formulaic recitation of the elements of a cause of action; rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

Section 349 of New York's General Business Law, commonly referred to as New York's Consumer Protection Act, makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . .."  N.Y. Gen. Bus. Law § 349.  As the name indicates, its purpose is to protect the consuming public.  "Generally, claims under the statute are available to an individual consumer who falls victim to misrepresentations made by a seller of consumer goods through false or misleading advertising."  *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 897 (N.Y. 1999); *see also Clover Pool Supply Co. v. Cent. N.Y. News, Inc.*, 2006 WL 3359323, *3 (W.D.N.Y. November 17, 2006); *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F.Supp. 1084, 1089 (S.D.N.Y. 1988).  In order to state a claim under New York General Business Law § 349, the plaintiff must allege: "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a

material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (citation omitted). "[A]s a threshold matter, plaintiffs claiming the benefit of section 349 - whether individuals or entities . . . - must charge conduct of the defendant that is consumer-oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). Thus, plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large." *Id.*

Courts considering the scope of the statute have repeatedly held that "a consumer, for § 349 purposes, is one who purchase[s] goods and services for personal, family or household use." *Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.,* 328 F.Supp.2d 443, 448 (S.D.N.Y. 2004) (internal quotation marks omitted); *see also Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103, 106 (App. Div. 2000). "New York State and Second Circuit courts have been skeptical of Section 349 claims involving private contract disputes between two parties, neither of which is a consumer." *Federated Retail Holdings, Inc. v. Sanidown, Inc.,* 2009 WL 4927560, *6 (S.D.N.Y. December 16, 2009) (quoting *Gaetano Assocs. Ltd. v. Artee Collections, Inc.*, 2006 WL 330322, *3 (S.D.N.Y. February 14, 2006)). Despite this skepticism, however, New York courts have allowed claims pursuant to section 349 by competitors and other corporate entities as long as harm to the public is at issue. *See Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir.1995), *cert. denied,* 516 U.S. 1114 (1996); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F.Supp.2d 269, 273 (S.D.N.Y. 2003).

Plaintiff does not bring suit as a competitor of the defendant, but as a consumer of defendant's testing services. It argues that it has adequately alleged "consumer-

oriented" conduct because other businesses may be similarly misled by defendants'
claimed expertise.  Additionally, plaintiff alleges that, in this case, the allegedly
negligent testing of the Aqua Dots product failed to reveal danger to consumers and
several children were reportedly harmed when they ingested the product.  To the extent
that plaintiff has brought suit against defendant as a consumer of testing services and
on behalf of other companies that may require product testing services, it is neither the
type of "consumer" that section 349 is intended to protect nor is the transaction at issue
the type of "consumer" transaction contemplated by the statute.

Courts have consistently held that unique private transactions between
sophisticated business parties do not give rise to liability under the statute.  *See New
York University v. Continental Ins. Co.,* 662 N.E.2d 763, 770 -71 (N.Y. 1995) (section
349 did not apply to private contract dispute over insurance policy coverage and the
processing of a claim unique to the parties);  *Oswego,* 647 N.E.2d at 744 ("Private
contract disputes, unique to the parties ... would not fall within the ambit of the
statute.");  *Sutton Assocs. v. Lexis-Nexis*, 761 N.Y.S.2d 800, 802 (Sup.Ct. 2003)
(dismissing a section 349 claim that alleged only "a private commercial dispute involving
the two businesses involved in the transaction");  *Maurizio v. Goldsmith*, 230 F.3d 518,
521-22 (2d Cir. 2000) (no section 349 liability in a copyright dispute between two
alleged co-authors);  *Genesco Ent'mnt v. Koch*, 593 F.Supp. 743, 752 (S.D.N.Y.1984)
(section 349 did not apply to a negotiation to rent Shea Stadium because the "single
shot transaction" did not affect the public interest and the "only parties truly affected ...
by the alleged misrepresentations ... [were] the plaintiff and the defendants.").

In *Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.,* 328 F.Supp.2d 443, *supra,* defendant contracted with plaintiff to supply computer hardware, software, and support services for a truck-tracking system.  When defendant's relationship with a subcontractor terminated, it was unable to complete the installation of the system.  Plaintiff brought suit alleging, *inter alia,* the violation of section 349 and argued that its contract with defendant was "a consumer-oriented run-of-the-mill contract with implications for thousands of buyers."  *Id.,* p. 450.  The court found that plaintiff was not the type of consumer protected by section 349, as the parties were "both sophisticated contracting entities with equal bargaining power, and the contract between them was for a business-only commodity, not a common consumer good."  *Id.* (citing *Cruz v. NYNEX Info. Res.,* 703 N.Y.S.2d 103, *supra*).  Here, the toxicity testing was conducted at the request of plaintiff for the direct benefit of the plaintiff pursuant to an agreement between the parties.  More significantly, toxicity testing is not a service that is purchased by the individual consumer.  "Although plaintiffs claim that they were acting as consumers and thus should be protected by the statute, in fact this case involves businesses engaged in arm's length transactions for services that are not available to the general public."  *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F.Supp.2d 565, 583 (S.D.N.Y. 1999) (dismissing section 349 claim by information provider against telephone carriers).

Moreover, the fact that consumers were the ultimate end-users of the product that was tested does not convert the transaction into a consumer transaction.  Although plaintiff alleges that several children were harmed when they ingested the Aqua Dots,

8

the deceptive conduct complained of, the misrepresentation of expertise in product testing, was not directed at the consuming public.  Although consumers eventually stood to be affected by any defects in the product, questions about misrepresentations between the parties are "essentially private matters" and do not come within the ambit of section 349.  *Pfizer, Inc. v. Stryker Corp.*, 2003 WL 21660339, *4 (S.D.N.Y. July 15, 2003) (in sale of business that manufactured artificial knee replacement joints, allegations of misrepresentations by seller regarding compliance with law and safety of products were private matters between sophisticated business entities and did not fall within section 349 despite fact that consumer could eventually be affected by defects in products); *see also Siotkas v. LabOne, Inc.*, 2009 WL 691967, *1 (E.D.N.Y., March 12, 2009) (drug testing of urine samples is not a consumer product, but a service that only a business would purchase - section 349 claim against testing lab dismissed).

It is not enough under section 349 to simply allege some harm to the end-user consumer.  To the extent that plaintiff has alleged harm to consumers of the Aqua Dots, its claim for damages as a result of those injuries is indirect and derivative.  It is well-settled that derivative actions are barred under section 349.  *See City of New York v. Smokes-Spirits.Com, Inc.,* 911 N.E.2d 834, 838 (N.Y. 2009); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1144 (N.Y. 2004).  "An injury is indirect or derivative when the loss arises solely as a result of injuries sustained by another party."  *Blue Cross,* 818 N.E.2d at 1145.  Here, plaintiff has alleged that defendants held themselves out to be experts in the field of product testing, that they failed to ensure the adequacy of their testing methods, and that they reported their

findings in an "incorrect, misleading, and deceptive" fashion. Dkt. #7, ¶¶ 53-56.  In

reliance on the allegedly negligent testing, plaintiff distributed the Aqua Dots and placed

a dangerous product into the stream of commerce.  The toy was purchased by

consumers, and in some cases, the beads were ingested by children.  When those

children became ill, the product was recalled, and plaintiff suffered monetary loss,

including the cost of the recall, lost profits, and damage to its reputation among

consumers and retailers.  *Id.,* ¶ 35.   Plaintiff's allegations of harm, indirect and

derivative as they are, do not fall within the ambit of section 349.  *See Smokes-*

*Spirits.Com*, 911 N.E.2d 834 (city did not have standing to assert section 349 claim

against cigarette retailers where alleged injury, lost tax revenue, was entirely derivative

of injuries allegedly suffered by consumers); *Blue Cross & Blue Shield,* 818 N.E.2d

1140 (section 349 does not authorize health insurer to sue tobacco companies

derivatively to recover for injuries to its insureds resulting from the companies' allegedly

misleading statements about the dangers of smoking); *Federated Retail Holdings, Inc.*

*v. Sanidown, Inc.*, 2009 WL 4927560 (S.D.N.Y. December 16, 2009) (plaintiff's alleged

injury, lost profits, was distinct from that which could possibly befall consumers and

could not form basis of section 349 claim).

    In *Federated Retail Holdings, Inc. v. Sanidown, Inc., supra,*  plaintiff sold

products manufactured by defendant.  When certain products were found to be

misrepresented regarding the content of the goods, plaintiff brought suit alleging the

violation of section 349.  The court found that plaintiff's case had "little to do with the

'consumer injury or harm to the public interest' that is required in order to give a

non-consumer standing to bring such a claim."  *Sanidown,* 2009 WL 4927560, at *6.

The court stated that:

> the gravamen of Plaintiffs' case is injury to themselves resulting from Defendants' failure to comply with the terms of contracts between the parties, including potential injury to their reputation should they be discovered to have sold goods that differed from the descriptions on their packaging and labels. These are injuries distinct from those that might befall consumers, and cannot form the basis for a Section 349 claim.

*Sanidown,* 2009 WL 4927560, at *6.

Plaintiff relies on *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris,* 344 F.3d 211 (2d Cir. 2003), *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256 (2d Cir. 1995), *cert. denied,* 516 U.S. 1114 (1996) and *Vitabiotics Ltd. v. Krupka,* 606 F.Supp.779 (E.D.N.Y. 1984) to argue that it has sufficiently alleged harm to the consuming public.  None of these cases support the contention that plaintiff's section 349 claim should not be dismissed.  In *Blue Cross & Blue Shield,* 344 F.2d 211, *supra,* the Second Circuit held that the defendant tobacco company misled consumers as to the dangers of smoking and discouraged them from quitting smoking.  Accordingly, the court found that, even though the plaintiff, a third party payer of health care costs,  was not a consumer of defendant's products, it had standing to sue on its own behalf.  *Id.,* pp. 218–19.  However, the court certified the question to the New York Court of Appeals as to whether plaintiff's claim, in which it sought to recover the costs of health care services incurred as a result of harm to its subscribers, was too remote to permit suit under that statute.  The Court of Appeals held that section 349 did not authorize such derivative claims.  *See Blue Cross & Blue Shield,* 818 N.E.2d 1140, 1144 (N.Y. 2004).

*Securitron* and *Vitabiotics* were both cases in which a competitor sued another business entity for direct injuries.  In *Securitron*, a lock equipment manufacturer brought suit against a competitor whose dissemination of false and misleading information regarding the plaintiff's products resulted in damages to the plaintiff.  The court recognized that corporate competitors have standing to bring a claim under the statute, as long as some public harm is alleged.  In that case, the defendant conceded that the public may have been incidentally affected by this private commercial dispute and the court agreed.  The New York Court of Appeals, in *Smokes-Spirits.Com,* 911 N.E.2d 834, *supra,* cited the *Securitron* case for the proposition that the class of persons accorded standing under section 349 is not limited to "consumers," *id.,* p. 840, n.3, but stated that "the *Securitron* court did not expand the class of section 349(h) plaintiffs to those persons who . . . can link a derivative injury to some public harm."  *Id.,* p. 840. Similarly, in *Vitabiotics,* a British vitamin manufacturer alleged trademark violation and a section 349 claim against its former American distributor who sold vitamins using the plaintiff's trademark and trade dress.  It was found to be "plainly deceptive" to the consuming public for the defendant to represent that the vitamin formula was developed by defendant.  *Vitabiotics,* 606 F.Supp. at 785.  While these cases are illustrative of the "public harm" that is required for a section 349 claim between competitors, neither of these cases supports plaintiff's position that it should be allowed to claim indirect damages as a result of the alleged harm to the consumers of Aqua Dots.

Accordingly, it is the recommendation of the undersigned that defendants' motion for judgment on the pleadings dismissing the section 349 claim be GRANTED.

## 2. Motion for Leave to file a Second Amended Complaint

Following oral argument on the motion to dismiss, on August 18, 2010 plaintiff filed a motion for leave to amend the complaint.  Dkt. #84.  Specifically, plaintiff seeks to add a claim pursuant to the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* ("NJCFA"), as to defendant EPSL and a claim for common law fraud against both defendants.  Plaintiff acknowledges that the court's case management order entered June 2, 2009 (Dkt. #56) specified that motions to join other parties and to amend pleadings were to be filed no later than July 31, 2009.  However, it argues that "discovery has revealed grounds for pleading additional fraud claims under Rule 9(b)." *See* Dkt. #84, Memorandum of Law, p. 5.[3]

Generally, amendments to pleadings are governed by Rule 15 of the Federal Rules of Civil Procedure.  Under Rule 15, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman v. Davis*, 371 U.S. 178, 182, (1962).  However, if amendment would be futile - that is, if the amended pleading does not state a cause of action or is otherwise inadequate - then leave to amend can and should be denied.  *See Lucente v. International Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Leave to amend should be denied when the amendment would be prejudicial to the opposing party, such as by unnecessarily re-opening

---

[3]  The motion for leave to amend was filed nine days after the court heard oral argument.  It would appear to be no coincidence that plaintiff seeks to add a fraud claim after the court asked defense counsel at oral argument whether the facts would not suggest a common law fraud claim as opposed to a consumer protection claim.  Dkt. #93, p. 9.

discovery.  *See S.E.C. v. Norton,* 21 F.Supp.2d 361, 363 (S.D.N.Y. 1998); *Stone v. Courtyard Mgmt. Co.*, 2001 WL 474161 (S.D.N.Y. April 17, 2001).  Finally, if a party seeks amendment of a complaint after the scheduling order deadline has passed and the movant fails to establish "good cause," the motion to amend should be denied. Fed. R. Civ. P. 16(b)(4); *Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 582 F.3d 244, 267 (2d Cir. 2009), *cert. denied,* 131 S.Ct. 79 (2010); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).  The primary concern in the good cause analysis is whether the movant can demonstrate diligence.  *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 244 (2d Cir. 2007).  "It is not, however, the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."  *Id.*

The defendants both contend that plaintiff has failed to show the requisite good cause to allow an amendment under Rule 16 and that the proposed amendment is prejudicial and would be futile.  Plaintiff bases its motion on the statement that it received discovery "revealing details required for pleading Counts IV and V" well after the deadline in the case management order.  Dkt. #84, Att. 2 (Memorandum of Law), p. 11.

The court has examined the Proposed Second Amended Complaint (Dkt. #84, Att. 3, Exhibit A, hereafter "Proposed SAC") and compared it to the amended complaint. Dkt. #7.   The Proposed SAC contains no additional information indicating that plaintiff could not have moved for permission to amend prior to the deadline imposed by the

case management order.  The only "new" details in the Proposed SAC include a statement that EPSL's marketing materials claim that they have "an experienced staff including 5 Ph.D.-level chemists" and a "dedicated team of scientists."  Proposed SAC, ¶ 5.  In contrast, in the amended complaint, plaintiff alleged that EPSL "advertises its expertise in products testing as being robust due to its staff of about 7,000 in over 150 laboratories . . .."  Dkt. #7, ¶ 7.  The additional detail, reportedly contained in EPSL's marketing materials, could have been ascertained in the exercise of due diligence.  Moreover, the court is at a loss to determine the relevance of this information, as plaintiff fails to allege that this is a misrepresentation of EPSL's staffing.  Additionally, plaintiff alleges in the Proposed SAC that BVCPS "does not perform animal testing itself," *Id.,* ¶ 11, an allegation that would appear to have no relevance given the fact that plaintiff was fully aware that BVCPS contracted with EPSL to perform the testing of the Aqua Dots.  Plaintiff also alleges in the Proposed SAC that BVCPS "utterly failed to oversee, supervise, or monitor EPSL with regard to the design, procedures, and performance of its testing."  *Id.,* ¶ 27.  In its answer and cross claim, filed February 13, 2009, BVCPS alleged that EPSL performed the toxicity testing at issue and chose the testing methodology.  Dkt. #30, p. 11.  Thus, plaintiff was aware of the BVCPS position, well before the deadline for amendments, that EPSL had conducted the testing and had chosen the testing methodology.

Count IV, pursuant to the New Jersey statute, is merely a regurgitation of the New York General Business Law claim.  The New Jersey statute is a more detailed version of the New York statute, with both statutes prohibiting deceptive acts or practices in the conduct of any business.  The two claims are essentially the same

except that, in the Proposed SAC, plaintiff alleges that the conduct took place in New Jersey and includes a more detailed allegation of causation. *Id.,* ¶¶ 60, 67.  That allegation of causation is essentially lifted from the amended complaint. *See* Dkt. #7, ¶ 33.  Thus, there is no reason that plaintiff could not have alleged the NJCFA cause of action within the time limits of the case management order.

In the proposed common law fraud claim, plaintiff alleges that the defendants made material representations by "publicly marketing an expertise, then placing woefully unqualified individuals in highly specialized roles" and in reporting to plaintiff that the Aqua Dots were not toxic.  Proposed SAC, ¶ 74.  Additionally, plaintiff alleges that the defendants failed to disclose the lack of qualifications of its employees, the inadequacy of the testing methods, the inability to interpret the results, and the lack of oversight.  *Id.,* ¶ 75.  These allegations are merely restatements of the information in the original amended complaint.

The deadline for amendments has long passed and plaintiff had adequate information to amend within the strictures of the case management order.  Accordingly, the court finds that plaintiff has failed to show good cause in seeking to amend the complaint at this late date.  Additionally, even if the court were to find that plaintiff was justified in seeking to amend after the deadline, the court finds that the proposed claims would be futile, as neither the fraud claim nor the New Jersey consumer protection statute claim would survive a motion to dismiss pursuant to Fed. R. Civ. P. 12.

## A.  New Jersey Consumer Fraud Statute

The NJCFA provides in pertinent part:

> The act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false promise,
> misrepresentation, or the knowing, concealment, suppression, or omission
> of any material fact with intent that others rely upon such concealment,
> suppression or omission, in connection with the sale or advertisement of
> any merchandise or real estate, or with the subsequent performance of
> such person as aforesaid, whether or not any person has in fact been
> misled, deceived or damaged thereby, is declared to be an unlawful
> practice ....

N.J. Stat. Ann. 56:8-2.  More specifically, a claimant states a viable NJCFA claim where the claimant alleges: (1) unlawful conduct by an opposing party; (2) an ascertainable loss by the claiming party; and (3) a causal relationship that exists between the unlawful conduct and the ascertainable loss.  *See Hassler v. Sovereign Bank*, 644 F.Supp.2d 509, 514 (D.N.J. 2009); *aff'd,* 374 Fed. Appx. 341 (3d Cir. 2010).

The NJCFA provides a private right of action for any "person" who is harmed by such unlawful practices, N.J. Stat. Ann. § 56:8-19, and defines "person" to include, among others, "any ... corporation, company, trust, business entity or association." *Id.,* § 56:8-1(d).  "Merchandise" is defined to include "any objects, wares, goods commodities, services or anything offered, directly or indirectly to the public for sale." § 56:8-1(c).  To constitute a violation of the NJCFA "the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer, and thus most clearly and directly involve a matter of legitimate public concern."  *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.,* 655 A.2d 417, 430  (N.J. 1995), *cert. denied,* 516 U.S. 1066 (1996).  The nature

of the transaction, not the identity of the purchaser, determines whether the NJCFA is applicable. *J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1273 (3d Cir. 1994). A business may only seek relief under the NJCFA "when it finds itself in a consumer-oriented transaction." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F.Supp.2d 557, 560 (D.N.J. 2002). Furthermore, in the context of services, "[t]he challenged services generally must be of the type sold to the general public." *Id.* at 561; *see also Kavky v. Herbalife Int'l of America,* 820 A.2d 677, 683 (N.J.Super. Ct. 2003) (NJCFA concerned "not so much with the specific nature of the property, but rather whether the property is generally made available to the public").

Here, plaintiff purchased toxicity testing, a product that is not available to the general consuming public. Products and services that are purchased for consumption or use in the course of business are covered by the NJCFA, while "goods or services which are never consumed or used in the course of business, such as products purchased at wholesale for resale, franchises, and designs are not covered by the NJCFA." *Prescription Counter v. AmerisourceBergen Corp.*, 2007 WL 3511301, *15 (D.N.J. November 14, 2007); *cf. Maintainco, Inc. v. Mitsubishi Caterpillar Forklift America, Inc.*, 2006 WL 1982735 (N.J. Super. Ct. June 5, 2006) (sale of franchises, not offered to the public, are not covered by the NJCFA); *BOC Group, Inc. v. Lummus Crest, Inc.,* 597 A.2d 1109, 1112 (N.J. Super. Ct. Law Div.1990) (NJCFA does not cover the sale of a design because it is merely an "idea"). Consumer product testing is a service that is neither purchased by the public, nor "consumed" by the buyer, within the meaning of the NJCFA. Accordingly, the plaintiff's claim under the NJCFA would not survive a motion to dismiss, and it is therefore DENIED.

### B.  Common Law Fraud

In an action to recover damages for fraud under New York law, the plaintiff must allege: (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury.  *AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d 202, 208 (2d Cir. 2000) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996)).  A complaint alleging fraud must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that "[i]n all averments of fraud ..., the circumstances constituting fraud ... must be stated with particularity."  Fed. R. Civ. P. 9(b).  In order to comply with Rule 9(b), the proposed complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted).  While Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally," it should not be "mistaken for license to base claims of fraud on speculation and conclusory allegations."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Here, plaintiff alleges that the defendants "publicly marketed an expertise" in the field of product testing, and misrepresented the safety of the Aqua Dots.  Proposed SAC, ¶ 74.  It fails to specify the allegedly fraudulent statements, the speaker, or where and when the allegedly fraudulent statements were made, stating merely that the statements were made "in or around June through August 2007."  *Id.*  Additionally,

plaintiff alleges that the defendants failed to disclose the lack of qualifications of their employees, the inadequacy of their testing methods, their inability to interpret the results, and their lack of oversight.  *Id.,* ¶ 75.

To the extent that plaintiff alleges fraud based on the defendants' claimed expertise in the field of product testing, such statements are not actionable as fraud. To be actionable, a misrepresentation must be one of existing fact.  Expressions of "mere opinion or puffery" are "not actionable representations of fact" sufficient to state a claim for fraud.  *Greenberg v. Chrust,* 282 F.Supp.2d 112, 120-21 (S.D.N.Y. 2003) (quoting *Reich v. Mitrani Plasterers Co.*, 701 N.Y.S.2d 368, 369 (App. Div. 2000)); *see also Jacobs v. Lewis*, 689 N.Y.S.2d 468, 468 (App. Div. 1999) (purported misrepresentations regarding defendant's background expertise and promises "amounted to no more than opinions and puffery or ultimately unfulfilled promises, and in either case were not actionable as fraud."); *Highlands Ins. Co. v. PRG Brokerage, Inc.*, 2004 WL 35439, *3 (S.D.N.Y. January 6, 2004) (defendants' statements that they had expertise in the field of livery car insurance "is nothing more than puffery, and is not actionable"); *McMullen v. Klaiman (In re Klaiman)*, 202 B.R. 813, 816 (Bankr.D.Conn. 1996) ("To be actionable, the representation must be one of existing fact and not merely an expression of opinion, expectation or declaration of intention.") (*quoting Smith v. Meyers (In re Schwartz & Meyers)*, 130 B.R. 416, 423 (Bankr.S.D.N.Y. 1991)). The defendants' claimed "expertise" in the field of product testing is an expression of opinion as to their abilities and standing in the field, and is not actionable under New York law.  Additionally, while plaintiff has alleged that EPSL's marketing materials boast its employment of 5 Ph.D. chemists and 7,000 employees in 150 laboratories worldwide, plaintiff has not alleged that this statement is untrue.

Plaintiff's allegation that the defendants misrepresented the test results is likewise not actionable as a fraudulent misrepresentation.  While "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally," plaintiffs are nonetheless required to "allege facts that give rise to a strong inference of fraudulent intent."  *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d at 1128, *supra*; *see also Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir. 1995).  Having used an apparently inadequate testing methodology, EPSL found the Aqua Dots to be non-toxic and reported the results to BVCPS, which then conveyed the results to plaintiff.  There is no suggestion that the defendants knew the beads to be toxic or had a reason to purposefully mis-report their toxicity.  Plaintiff has not alleged any facts that would give rise to an inference of an intent to deceive by the defendants in the reporting of the test results.  Additionally, on a motion to dismiss, the court may consider documents incorporated by reference in the complaint.  *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010).  Here, the report prepared by EPSL, stating that the Aqua Dots were non-toxic, is integral to the complaint and clearly indicates that defendants did not intentionally mislead plaintiff as to the test methodology.  *See* Dkt. #87, Exh. C.

Finally, plaintiff has failed to plead its fraudulent concealment claim with the requisite specificity.  Plaintiff alleges that defendants intentionally concealed the lack of qualifications of their employees, inadequacy of their testing methods, inability to interpret test results, and lack of oversight.  Proposed SAC, ¶ 75.  "Although scienter need not be alleged with great specificity, there must be some factual basis for conclusory allegations of intent."  *Ouaknine v. MacFarlane,* 897 F.2d 75, 79-80 (2d Cir. 1990) (internal cites omitted).  The allegations in the Proposed Second Amended

Complaint are conclusory at best, do not give rise to a "strong inference" of fraudulent intent, and do not set forth a basis to distinguish this alleged act of fraud from the claims of negligence previously pled.  Accordingly, the motion for leave to file a second amended complaint is DENIED.

## CONCLUSION

It is the recommendation of the undersigned that the defendants' motion for judgment on the pleadings be GRANTED and the claim pursuant to the New York General Business Law be dismissed.  Additionally, the plaintiff's motion for permission to file a second amended complaint is DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the

magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

Dated:        Buffalo, New York
              March 4, 2011

                              *s/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**

23