**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**SPIN MASTER LTD.,**

                              **Plaintiff,**                    **08-CV-923A (Sr)**

**v.**


**BUREAU VERITAS CONSUMER PRODUCTS**
**SERVICE, INC., et al.,**

                              **Defendants.**

_____


### DECISION AND ORDER

        This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #9.


        Currently before the Court is a motion by defendant Eurofins Product

Safety Labs ("Eurofins"), to strike plaintiff Spin Master, Ltd.'s ("Spin Master's"), revised

response to defendant Bureau Veritas Consumer Products Services, Inc.'s ("Bureau

Veritas'"), request for admission No. 17.  Dkt. #127.  In response to Eurofins' motion,

Spin Master moves, pursuant to Rule 36(b) of the Federal Rules of Civil Procedure for

leave to amend its response to Bureau Veritas' request for admission No. 17.  Dkt.

#137.

This action arises from the November 7, 2007 recall of a children's toy, Aqua Dots, after it was discovered that 1,4-butanediol, a chemical in Aqua Dots, metabolizes into gamma-hydroxy butyrate ("GHB"), a/k/a the date rape drug, causing children who swallow sufficient quantities of the Aqua Dots to become comatose.  Dkt. #1.  Spin Master alleges that in June of 2007, it retained Bureau Veritas, which contracted with Eurofins, to perform oral acute toxicity animal tests pursuant to 16 C.F.R. § 1500.3(c)(2)(i)(A), and that the tests were not performed properly, causing Bureau Veritas to issue an erroneous report that Aqua Dots were not toxic.  Dkt. #1. Spin Master alleges that it relied upon the Bureau Veritas report and Eurofins testing in continuing to distribute and sell Aqua Dots.  Dkt. #1.

The lawsuit was commenced by the filing of a complaint on December 17, 2008.  Dkt. #1. Defendants answered in February of 2009 and a Case Management Order was entered on June 2, 2009.  Dkt. #56.  On July 13, 2009, Bureau Veritas served its first set of requests for admission upon Spin Master.  Dkt. #129-6.  On September 14, 2009, subject to objections to the extent that the request was "vague, ambiguous and uncertain," Spin Master admitted that "[t]he retail sale of Aqua Dots began in April 2007."  Dkt. #129-1, p.4.  On June 2, 2011, Spin Master revised its response as follows:

> Spin Master objects to this Request to the extent that it is vague, ambiguous and uncertain.  Subject to this and the foregoing General Objections, Spin Master responds as follows: Deny. Aqua Dots sales by Spin Master to retailers began on May 10, 2007.  The first of such sales were to Target Corporation.  Retail sales of Aqua Dots to consumers

began in early June 2007.  Direct Response[1] sales of Aqua
Dots to consumers began on April 16, 2007.

Dkt. #129-2, p.5.

Eurofins argues that it is prejudiced by this amendment because it
mapped out its discovery plan and developed its trial strategy in reliance upon the
admission that Spin Master began selling Aqua Dots through retailers such as Toys R'
Us, Wal-Mart, Target and Costco in April of 2007.  Dkt. #128, p.2.  For example,
Eurofins argues that it chose not to seek testimony or written discovery from retailers
"who most certainly possess relevant documents and information regarding both Spin
Master's distribution of Aqua Dots to retailers and those retailers' subsequent
distribution of Aqua Dots to end consumers."  Dkt. #128, p.5. Eurofins also challenges
the accuracy of Spin Master's revision, noting a report of hospitalization of a seven year
old girl on April 17, 2007 following ingestion of Aqua Dots purchased from Wal-Mart.
Dkt. #129-14.  Eurofins argues that Spin Master's admission that the retail sale of Aqua
Dots began in April of 2007 is central to its defense that Spin Master distributed the
product to consumers long before it commissioned the toxicity test.  Dkt. #128, p.2.

Spin Master argues that although a "subsidiary of Spin Master began
selling Aqua Dots through direct response sales to consumers in April 2007," it did not

---

[1]The Electronic Retailing Association, a trade association of electronic marketers, defines "direct
response" as

> Advertising used to trigger a response from the viewer or recipient of the
> advertisement.  This is a method of marketing and sales which bypasses
> traditional retail stores and presents a product for sale directly to the
> consumer.

Dkt. #157, p.4.

discover until after it responded to this request for admission, which was served during the early stages of discovery, that retail stores did not begin selling Aqua Dots until June 2007.  Dkt. #137, pp.2, 5 & 7.  Spin Master also argues that because it was not a retailer of Aqua Dots, it has never possessed first-hand knowledge of when retailers commenced selling Aqua Dots and that it's knowledge of the subject is based upon the same business records that have been provided to defendants during discovery.  Dkt. #137, pp.2, 9, 10 & 13.  Moreover, Spin Master notes that defendants have questioned deposition witnesses regarding their knowledge of the chronology of sales of Aqua Dots.  Dkt. #137, p.12.  Spin Master argues that it should be permitted to amend its response to clarify the ambiguous, vague and overbroad request by distinguishing direct response sales from retail sales.  Dkt. #137, p.2.  Spin Master also argues that Eurofins should not be permitted to challenge the amended response because the request for admissions was made by Bureau Veritas, not Eurofins.  Dkt. #144, p.2.

Eurofins replies that the amendment should be stricken because it does not aid in the presentation of the merits given that the substance of the original admission is not contested – *i.e.*, consumers were able to purchase Spin Master's Aqua Dots as of April of 2007.  Dkt. #151, pp.13-14.

Bureau Veritas argues that Spin Master's motion to amend it response should be denied because the amended response serves only to complicate the undisputed fact that consumers were able to purchase Aqua Dots as of April of 2007.  Dkt. #154.  Bureau Veritas argues that there is no need to amend the response if retail is afforded is plain meaning, *to wit*, the sale of commodities or goods in small quantities

to ultimate consumers.  Dkt. #154, p.6, *citing* Webster's Third New International
Dictionary.

Spin Master responds that Bureau Veritas has not moved to strike the
amendment and that Bureau Veritas should not profit from its failure to define retail
sales or to request that Spin Master admit that "sales of Aqua Dots began in April
2007."  Dkt. #157.  Spin Master agrees that its response does not alter when Aqua Dots
first became available for purchase by consumers but only attempts to clarify how Aqua
Dots were made available to consumers.  Dkt. #158, p.3.

Rule 36(a)(1) of the Federal Rules of Civil Procedure provides that "a
party may serve on any other party a written request to admit, for purposes of the
pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating
to: (A) facts, the application of law to fact, or opinions about either; and (B) the
genuineness of any described documents."

> If a matter is not admitted, the answer must specifically deny
> it or state in detail why the answering party cannot truthfully
> admit or deny it.  A denial must fairly respond to the
> substance of the matter; and when good faith requires that a
> party qualify an answer or deny only a part of a matter, the
> answer must specify the part admitted and qualify or deny
> the rest.

Fed. R. Civ. P. 36(a)(4).  Rule 36(b) of the Federal Rules of Civil Procedure provides
that

> A matter admitted under this rule is conclusively established
> unless the court, on motion, permits the admission to be
> withdrawn or amended.  Subject to Rule 16(e), the court
> may permit withdrawal or amendment if it would promote the

> presentation of the merits of the action and if the court is not
> persuaded that it would prejudice the requesting party in
> maintaining or defending the action on the merits.   An
> admission under this rule is not an admission for any other
> purpose and cannot be used against the party in any other
> proceeding.

Thus, the decision to excuse a party from its admission is within the court's discretion

and is not required even if both criteria set forth in the Rule are satisfied.  *Donovan v.*

*Carls Drug Co., Inc.*, 703 F.2d 650, 651-52 (2d Cir. 1983), *rejected on other grounds by*

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988).


        In considering a request to withdraw or amend an admission, the Court

should be cognizant of the underlying goal of requests for admissions, which are

intended to narrow the factual issues of a case and speed the resolution of claims.  *Ng*

*v. HSBC Mortg. Corp.,* No. 07-CV-5434, 2011 WL 3511296, at *4 (E.D.N.Y. Aug. 10,

2011).  Moreover, the Court should consider that it is the party requesting admission

that "bears the burden of setting forth its requests simply, directly, not vaguely or

ambiguously, and in such a manner that they can be answered with a simple admit or

deny without an explanation, and in certain instances, permit a qualification or

explanation for purposes of clarification."  *Henry v. Champlain Enterprises, Inc.*, 212

F.R.D. 73, 77 (N.D.N.Y. 2003). "Generally, qualification is permitted if the statement,

although containing some truth, . . . standing alone out of context of the whole truth . ..

convey[s] unwarranted and unfair inferences." *Diederich v. Dep't of Army*, 132 F.R.D.

614, 619 (S.D.N.Y. 1990) (internal quotations omitted).  "Qualifying a response may be

particularly appropriate if the request is sweeping, multi-part, involves sharply contested

issues, or goes to the heart of a defendant's liability."  *Wiwa v. Royal Dutch Petro. Co.*,

No. 01CIV1909, 2009 WL 1457142, at *4 (S.D.N.Y. May 26, 2009).  Qualifications should  "provide clarity and lucidity to the genuineness of the issue" and not "obfuscate, frustrate, or compound the references."  *Henry*, 212 F.R.D. at 78.


In the instant case, Spin Master's attempt to amend its response to qualify the request for admission so as to distinguish between sales to consumers *via* retailers such as Target and sales to consumers *via* direct response sales such as commercials urging purchase through toll-free telephone numbers does nothing to promote the presentation of the merits in this action.  Regardless of how the consumer purchased the product, there does not appear to be any dispute that consumers were able to purchase Aqua Dots as of April of 2007.  Thus, Spin Master's admission comports with a plain reading of the request for admission.  Moreover, Spin Master's admission that "[t]he retail sale of Aqua Dots began in April 2007" does not preclude it from differentiating between sales by Target and direct response sales should such distinctions prove relevant.  Accordingly, the motion to strike is granted and the motion to amend is denied.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
                **March 27, 2012**


                        *s/ H. Kenneth Schroeder, Jr.*
                        **H. KENNETH SCHROEDER, JR.**
                        **United States Magistrate Judge**